IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| BRIAN BIG BOW,<br><br>    Plaintiffs,<br><br>vs.<br><br>OFC BREVIK; OFC WHITEHEAD; OFC REEVES; KETCHUM; RAINING BIRD; BROWN; and CHANDLER,<br><br>    Defendants. | Cause No. CV 22-53-GF-BMM<br><br>ORDER |

      Plaintiff Brian Big Bow filed a Complaint alleging civil rights violations and racial discrimination at the Cascade County Detention Center. (Doc. 1.) On June 17, 2022, Big Bow moved to proceed in forma pauperis. (Doc. 3.)

      The Court granted Big Bow's motion on June 24, 2022, and also explained that Big Bow's allegations failed to state a claim on which relief may be granted. (Doc. 4.) The Court allowed Big Bow to supplement his filed Complaint and ordered Big Bow to respond to the Order on or before August 1, 2022. (Doc. 4 at 5–6.) Big Bow filed a Supplement on July 6, 2022, in response to the Court's questions. (Doc. 6 at 1–4.) The Supplement raised a new allegation. The Court gave Big Bow another opportunity to amend the initial Complaint. (Doc. 7 at 1–2.) Big Bow did not respond to the Court's order.

1

Big Bow is a federal detainee. He entered a guilty plea and was sentenced on November 2, 2022 for a term of 24 months with credit for 227 days of time served. *See United States v. Big Bow*, No. CR 21-79-GF-BMM (D. Mont. filed Nov. 3, 2021); (*See* Doc. 62.)

## I. Screening

Big Bow is a federal detainee and is proceeding in forma pauperis. The Court must liberally construe pleadings filed by unrepresented incarcerated individuals and extend them an opportunity to amend the pleadings where appropriate. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Nonetheless, the Court must review a complaint to determine whether it fails to state a claim on which relief may be granted, *see* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(a), (b)(1), and dismiss a claim when its defects cannot be cured by amendment. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).

## II. Big Bow's Allegations

The June 24, 2022 Order stated that Big Bow need not file a new complaint but could simply supplement the original. (Doc. 4 at 5.) The Court reads the original Complaint (Doc. 1) and Supplement (Doc. 6) together.

Big Bow contends that a fellow inmate, Robert Ketchum, started a rumor that Big Bow was a snitch to provoke an assault on Big Bow. (Doc. 1 at 2.) Big

2

Bow alleges that Ketchum took information from discovery provided to Big Bow in his criminal case. (*See* Doc. 1 at 3; Doc. 6 at 2.) Big Bow alleges that Ketchum, his girlfriend Billy Ann Raining Bird, and two other inmates, Brown and Chandler, "stole my taxes" and "later got on the phone and got my other 49,913 somehow." (*See* Doc. 1 at 3; Doc. 6 at 2.)

Big Bow communicated with two of his lawyers regarding these allegations. One attorney called the jail, and Big Bow alleges the guards told Ketchum what Big Bow reported. Big Bow alleges that harassment and threats from fellow inmates then increased. When Big Bow signaled Officer Whitehead for help, the officer ignored him. (*See* Doc. 1 at 2–3; Doc 6 at 3, 4.) Big Bow's attempts to contact the sheriff were ignored. (*See* Doc. 6 at 2.) Big Bow says his cellmate was beaten up twice and, on one occasion, held Big Bow "hostage" in the cell by sharpening a razor and telling him not to leave the cell or seek assistance. (*See id.* at 3.) Big Bow also says he can hear other inmates teasing him and calling him names through the vents. (*See id.*)

Several inmates tried to lure Big Bow back into his cell after breakfast on April 15, but Big Bow did not go. Guards let Big Bow out of the pod for a mental health visit. Inmates pounded on the windows, calling Big Bow "a rat, snitch, and other cruel names" and threating to beat him up or kill him. The guards did nothing. (Doc. 1 at 3–4.)

Big Bow states that he told Officer Brevik and the mental health provider that inmates "were trying to steal my tax and child tax credit money," but neither helped him or reported the theft. Big Bow "could hear Ketchum in the vent splitting my money up." (*See id.* at 4.)

Big Bow told Brevik to move him to a different pod. Big Bow says, "We went by F pod to get my stuff," and inmates hit the glass "trying to get at me" for 45 minutes. (*See id*.) Big Bow adds that an inmate who is a murderer is "after" him and his family. Big Bow wants to be released to protect them. (*See id*. at 6; Doc. 6 at 4.)

Big Bow states that he has post-traumatic stress disorder, is marked a snitch, does not "get much help" from guards, has no razors and no opportunity to charge his tablet. He says the guards "let Weaselboy out to talk with them, he told them something, they let him out, why didn't they let me out." (Doc. 6 at 3; *see also* Doc. 1 at 5.) Big Bow says he is locked down for more than 24 hours and is let out of his cell too late in the day to contact his lawyer. (*See* Doc. 1 at 5.) He "live[s] in fear that a guard is going to let someone in my cell to kill me." (*Id*. at 6.) He also reports that Officer Ogdon "tells other inmates of others crimes." (*Id*.)  He states that he "slept 3 in a cell on the floor." (Doc. 6 at 2.)

Big Bow seeks $450,000 in damages and a declaratory judgment against Ketchum, Raining Bird, Brown, Chandler, and "CCDC staff." (Doc. 1 at 5, 6.)

### III. Analysis

Big Bow asserts that he can obtain or could have obtained evidence to show that what he says is true. (*See, e.g.*, Doc. 6 at 2.) The Court assumes Big Bow's assertions are true. Big Bow's Complaint must still contain sufficient factual matter to state a claim to relief that is plausible on its face. A plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the June 24, 2022 Order, the Court explained what Big Bow must do to state a claim against the guards for failing to protect him. (*See* Doc. 4 at 4–5.) Taking the Complaint and Supplement together, Big Bow fails to show that the guards did not act to keep him safe from physical harm. The Court understands that the situation was difficult and frightening and that inmates labeled him a snitch. Inmates do not act, however, under color of state law. To act "under color of state law" means that a person's actions can fairly be seen as acts of the State or a local governmental authority. *See, e.g.*, *Kirtley v. Rainey*, 326 F.3d 1088, 1092–95 (9th Cir. 2003). Other inmates cannot be sued for constitutional violations.

Big Bow's allegations show that guards took steps to protect him. For example, guards relocated him. (*See* Doc. 1 at 4.) They might have acted more quickly or on less evidence, but they did act, and Big Bow was not harmed by any

5

delay in their action. Big Bow's allegation that inmates in his new pod also threaten him through the vents does not support an inference that guards "disregard an excessive risk" to his safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The pleading fails to state a claim against a person acting under color of law for violating Big Bow's right to safety.

The June 24, 2022 Order also advised Big Bow to explain how inmates could steal money from each other and what actions guards could take to stop these acts. (*See* Doc. 4 at 5.) The Supplement does not address these points. (*See* Doc. 6.) Big Bow's pleadings fail to state a claim for theft against a person acting under color of law.

The June 24, 2022 Order also noted Big Bow's allegations that a "known murderer" is "after" him or his family. (*See* Doc. 4 at 5.) The Supplement states that Tommy Sutherland "was in F pod trying to fight and threatened to kill me through the vents." (Doc. 6 at 4.) Prisoners do not act under color of state law, and therefore, this allegation does not show that Sutherland is liable to Big Bow under federal civil rights law.

Finally, the Court granted Big Bow an opportunity to amend the new allegation in his Supplement. (*See* Doc. 7 at 2.) Big Bow asserted in the Supplement that he and two other inmates shared a cell and one or more of them had to sleep on the floor. (*See* Doc. 6 at 2.) His allegations do not show that his

conditions continued for a long enough period of time or caused or exacerbated other conditions to the point of violating his constitutional right to housing fit for human habitation. *See, e.g.*, *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989). As of November 3, 2022, Big Bow did not respond to the Court's July 11, 2022 Order to respond to provide more details related to his claims. (Doc. 7 at 2.)

Big Bow's Complaint and Supplement, read together, do not state a claim under federal law.

### IV. Certification for Appeal

Big Bow's pleading fails to allege facts supporting a claim upon which relief may be granted. Big Bow has not suffered a harm entitling him to a legal remedy under federal law. Big Bow's forma pauperis status should not continue on appeal because reasonable jurists would find no nonfrivolous issue to appeal. *See* Fed. R. App. P. 24(a)(3)(A), (4)(B).

Accordingly, IT IS ORDERED:

1. Big Bow's pleadings (Docs. 1, 6) are DISMISSED for failure to state a claim on which relief may be granted and without further leave to amend in this Court.

2. The clerk shall enter, by separate document, a judgment of dismissal.

3. The Court CERTIFIES that any appeal from this disposition would not be

taken in good faith.

DATED this 3rd day of November, 2022.

_____

Brian Morris, Chief District Judge
United States District Court